IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JAMIE L. ASH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. CIV-15-1114-HE |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|   Acting Commissioner of Social | ) | |
|   Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

     Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

     Plaintiff filed her applications for disability benefits on January 11, 2013 (protective filing date of December 26, 2012). (TR 199-211, 223). Plaintiff alleged that she became

1

disabled on August 18, 2010, when she was 26 years old, due to a sex chromosome disorder known as Turner's Syndrome, attention deficit hyperactivity disorder ("ADHD"), hearing loss in both ears, a learning disability, and obsessive-compulsive disorder ("OCD"). (TR 227). She completed one year of college and completed a certified nursing assistant ("CNA") program in 2008. (TR 228). Plaintiff was previously employed as a janitor, a veterinary hospital attendant, a retail stocker, a sign holder, and a CNA. (TR 25-26). Plaintiff stated that she stopped working in her last job as a CNA on August 18, 2010, when she was "laid off due to lack of work." (TR 227).

Plaintiff testified at a hearing conducted before an administrative law judge ("ALJ") on April 29, 2014. (TR 38-68). A vocational expert ("VE") also testified at the hearing. (TR 68-73). The record shows that Plaintiff received medical treatment at the San Joaquin General Hospital's medical clinic between March 2011 and March 2014. The record also contains the reports of two consultative psychological examiners. Dr. Richwerger evaluated Plaintiff for the agency on April 15, 2013. (TR 347-356). Dr. Morgan evaluated Plaintiff at Plaintiff's request on March 26, 2014. (TR 403-415). There is also a report of an audiometric examination of Plaintiff conducted by Dr. Kashani in June 2012. (TR 322-323).

The ALJ issued a decision on July 3, 2014, finding that Plaintiff was capable of working at her previous janitorial position and therefore not entitled to benefits. (TR 15-28). The Appeals Council denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

2

II. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

The agency follows a five-step sequential evaluation procedure in resolving the claims of disability applicants. See 20 C.F.R. §§ 404.1520(a)(4), (b)-(g), 416.920(a)(4), (b)-(g). "If

3

the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005). "The claimant is entitled to disability benefits only if he [or she] is not able to perform other work." Bowen v. Yuckert, 482 U.S. 137, 142 (1987).

Plaintiff was last insured for Title II disability insurance benefits on December 31, 2010. (TR 214, 278). Consequently, to be entitled to receive disability insurance benefits, Plaintiff must also show that she was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of [her] insured status" on December 31, 2010. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. ALJ's Decision

Following the agency's well-established sequential evaluation process, the ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010, and that she had not engaged in substantial gainful activity since August 18, 2010, her alleged disability onset date. At step two, the ALJ found that Plaintiff had severe impairments due to Turner Syndrome, hearing loss, anxiety disorder, and affective disorder. Considering the requirements of the regulations, and specifically the requirements

of listings 12.04, 12.05, and 12.06, at step three the ALJ found that Plaintiff's impairments did not meet or medically equal the requirements of any listed impairment.

At the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at any exertional level with the following restrictions: "the claimant should avoid concentrated exposure to excessive noise, hazardous machinery, and unprotected heights; she is limited to simple work as defined by the [Dictionary of Occupational Titles] at [Specific Vocational Preparation] levels 1 and 2, involving routine and repetitive tasks with only occasional changes in the work setting, occasional interactions with the general public and occasional interactions with coworkers and supervisors." (TR 19-20)(footnotes omitted).

Considering this RFC for work, Plaintiff's vocational history, and relying on the VE's hearing testimony, the ALJ found that Plaintiff was capable of performing her previous job as a janitor, both as the job is generally performed in the economy and as she actually performed the job, according to her description. The ALJ alternatively found at step five that Plaintiff was capable of performing other jobs available in the economy, including the jobs of sandwich maker, office helper, and inspector. Based on these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act and not entitled to benefits.

IV. <u>Duty to Develop the Record</u>

Listing 12.05(C) requires (1) a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant

5

work-related limitation of function. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C). The listing also requires that the onset of the impairment must have occurred before the age of 22. Id. at § 12.05.

With respect to the requirements of Listing 12.05(C), the ALJ's decision reflects consideration of the probative evidence in the record. The ALJ noted that Plaintiff's "IQ scores in the record reflect a learning disorder and Borderline Intellectual Functioning" although the ALJ noted that those scores were obtained in 2013, "well after the claimant attained age 22." (TR 19). Addressing the second portion of the listing's requirements, the ALJ reasoned that Plaintiff's "educational achievements, her past work background in semiskilled occupations of a certified nurse assistant and veterinary hospital attendant, as well as her level of activities of daily living and social interactions, all suggest that her learning disability has not caused limitations greater than those assessed in this decision. Those factors, in fact, render her allegations of a disabling learning disorder unpersuasive." (TR 19).

Plaintiff contends that the ALJ failed to adequately develop the record in this case because her attorney alerted the ALJ that Plaintiff had submitted "school" records to the agency that were not included in the administrative record. The hearing transcript reflects that Plaintiff's attorney informed the ALJ he had previously submitted Plaintiff's "school" records to the agency but the records had not been made part of the administrative record. Plaintiff's attorney then advised the ALJ that he would again submit those records following the hearing, and the ALJ stated that the record in Plaintiff's case would be kept open in order

6

for Plaintiff to submit additional evidence. (TR 74-75). The administrative record does not, however, contain any education-related records for Plaintiff.

"The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." Henrie v. United States Dep't of Health and Human Servs., 13 F.3d 359, 360-361 (10th Cir. 1993). It is not the ALJ's duty, however, to be the claimant's advocate," and "the ultimate burden of proving that [the claimant] is disabled under the regulations" is borne by the claimant. Id. at 361. When a disability claimant is represented by counsel, the ALJ is ordinarily "entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored." Maes v. Astrue, 522 F.3d 1093, 1096 (10th Cir. 2008)(internal quotation marks omitted).

This is not a case in which Plaintiff was unrepresented during the administrative proceeding. Based on Plaintiff's counsel verbal assurance that Plaintiff's school records would be submitted to the agency following the hearing, the ALJ properly relied on Plaintiff's counsel to furnish any additional evidence Plaintiff wished to submit to support her application.

Plaintiff contends that her school records would have shown that intelligence testing of Plaintiff in 2001 showed she had an intellectual functioning score of 69. However, Plaintiff's only support for this assertion is a statement contained in a brief submitted by Plaintiff's attorney to the Appeals Council in connection with her appeal of the ALJ's decision. The statement was not supported by any evidence. Under the circumstances

presented in this case, the ALJ took adequate steps to develop the record by allowing Plaintiff's counsel to submit further evidence following the hearing. No error occurred with respect to the ALJ's development of the record.

Further, there is substantial evidence in the record to support the ALJ's determination that Plaintiff did not submit evidence of a low IQ score before the age of 22, as required by the first part of Listing 12.05. Even assuming she could present such evidence, Plaintiff's impairment was not disabling per se under the listing because the evidence did not show the presence of additional and significant deficits in work-related functions as required by the second part of the listing. As the ALJ found in the administrative decision, the record shows that her "educational achievements, her past work background in semiskilled occupations of a certified nurse assistant and veterinary hospital attendant, as well as her level of activities of daily living and social interactions, all suggest that her learning disability has not caused limitations greater than those assessed" by the ALJ in the decision. (TR 19). Thus, no error occurred with respect to the step three determination or the ALJ's evaluation of the evidence in connection with the step three determination.

V. Consideration of the Evidence

Plaintiff contends that the ALJ erred by failing to expressly consider the written observations of an agency employee who interviewed Plaintiff in connection with her application. An agency employee noted on a form completed at the time of an interview with Plaintiff in January 2013 that during the interview Plaintiff "had a difficult time hearing questions being asked. Grandmother was present to help repeat questions in her ear.

8

[Grandmother] had to speak loudly in order for claimant to hear questions. [Plaintiff] had a difficult time understanding questions,[and] interviewer had to rephrase questions several times before obtaining an answer. [Plaintiff] was dressed appropriately for interview." (TR 224).

In a social security determination,

> [t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects."

Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996)(citation omitted).

Even assuming that the agency employee's written observations were probative, the ALJ found that Plaintiff had a severe hearing impairment. Thus, the agency employee's statement that Plaintiff's hearing impairment was observed during the interview was not probative evidence that the ALJ rejected. Moreover, the agency employee was not a medical professional, and the agency employee's notation that Plaintiff had difficulty understanding and concentrating during the interview was vague and did not provide probative evidence of a specific medical impairment other than the hearing impairment that the ALJ found to be severe. No error occurred in this regard.

## VI. Evaluation of Medical Opinions

Plaintiff contends that the ALJ improperly rejected Dr. Morgan's opinion that Plaintiff was disabled. Dr. Morgan provided a consultative psychological evaluation of Plaintiff on

9

one occasion in March 2014 on behalf of Plaintiff.[1] In Dr. Morgan's report of this evaluation, Dr. Morgan noted that in a Wide Range Achievement Test Plaintiff's scores indicated she was "extremely low functioning relative to word reading, sentence comprehension, spelling and reading composite and [she exhibited] borderline functioning relative to math computation." (TR 410). Dr. Morgan's diagnostic impression was depressive disorder not otherwise specified and learning disorder with a secondary diagnostic impression of borderline intellectual functioning. (TR 410).

Dr. Morgan noted his assessment that Plaintiff's mental impairments had resulted in "moderate" impairment in her ability to maintain daily activities, "moderate" impairment in social functioning, and "moderate" impairment in concentration, persistence, or pace. (TR 411). Dr. Morgan additionally assessed Plaintiff as being "moderately" impaired in several mental work-related functions, such as maintaining regular attendance, completing a normal workday without interruption from psychologically-based symptoms, performing at a consistent pace, interacting with coworkers and the public, withstanding the stress of a routine workday, and dealing with various changes in the work setting. (TR 411-12). Dr. Morgan opined that Plaintiff's mental impairments satisfied the "criteria for [Listing] 12.04" and that she had been "disabled since the point in time that she initially applied for

---

[1] The ALJ described Dr. Morgan as a "treating" psychiatrist. (TR 23). However, nothing in the record indicates that Dr. Morgan provided treatment for Plaintiff on an ongoing basis before or after the one-time consultative evaluation. Under the agency's regulations, Dr. Morgan would not be considered a "treating" psychiatrist, see 20 C.F.R. § 404.1527(c)(2), and it appears the ALJ inadvertently erred by identifying Dr. Morgan as a "treating" psychiatrist.

disability." (TR 410, 412).

The ALJ is required to consider all medical opinions in the record. 20 C.F.R. §404.1527(c). However, unlike the deference paid to treating physicians' opinions, non-treating physicians' opinions are not entitled to controlling weight, and the ALJ need not give specific reasons for giving lesser weight to non-treating physicians' opinions. Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003). Nevertheless, the ALJ is required to consider the opinions of non-treating physicians, to discuss the weight assigned to such opinions, and to provide specific, legitimate reasons for rejecting such opinions. Id. (citing 20 C.F.R. §§404.1527(d), 416.927(d); Social Security Ruling 96-5p, 1996 WL 374183, *1; and Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)); 20 C.F.R. § 404.1527(e)(2)(ii).

The ALJ discussed Dr. Morgan's report and opinions at length in the decision. The ALJ determined that Dr. Morgan's opinion concerning Plaintiff's mental functional limitations was entitled to "significant weight" because the opinion was "consistent with the record as a whole" and showed "significant consideration of and accommodation for the claimant's subjective complaints." (TR 24). The ALJ found, however, that Dr. Morgan's opinion that Plaintiff was disabled because her impairments satisfied the criteria for Listing 12.04 (affective disorders) was "inconsistent with the moderate functional limitations he assessed," that Dr. Morgan's opinion indicated he may not have been familiar with the definition of "disability" in the Social Security Act and governing regulations, and that it was possible the doctor had found Plaintiff was merely unable to perform her past work, which assessment the ALJ reasoned was "consistent with the conclusions reached in this decision."

11

(TR 24).

The ALJ appropriately discounted Dr. Morgan's opinion that Plaintiff was disabled as this issue is one reserved entirely to the Commissioner. 20 C.F.R. § 404.1527(d)(3); Social Security Ruling 96-7p, 1996 WL 374186; Castellano v. Sec. of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). Moreover, as the ALJ reasoned, Dr. Morgan's assessment of Plaintiff's functional limitations was not consistent with his opinion that she was disabled under Listing 12.04 of the regulations. This is true because the regulations require more than moderate functional limitations to support a finding of disability due to a mental impairment. *See* 20 C.F.R. § 404.1520a; 20 C.F.R. pt. 404, subpt. P, app. 1, Listings 12.04. The ALJ did not err in rejecting Dr. Morgan's opinion that Plaintiff's mental impairments met or equaled the requirements of Listing 12.04.

Plaintiff also contends that the ALJ's decision is deficient because the ALJ found that Dr. Morgan's assessment of Plaintiff's functional limitations was entitled to significant weight and then did not include any limitations in the RFC findings consistent with Dr. Morgan's assessment. But giving a medical opinion significant weight is not commensurate with whole-heartedly adopting that opinion. The ALJ reasoned in the decision that

> [p]ursuant to 20 CFR 404.1527 and 416.927, the assessment of an individual's [RFC] is an issue reserved to the Commissioner. Therefore, the undersigned is not bound by limitations described by the medical sources discussed above. In determining the claimant's [RFC], the undersigned has considered the claimant's history of learning disability and underlying borderline intellectual functioning, **including the moderate limitations assessed by Dr. Morgan**. The limited mental health record at the hearing level shows that claimant has not required extensive

12

> treatment, counseling or medication. She has been treated conservatively and she has not required inpatient care at any point. As already noted, her past work history and education, as well as her level of activities of daily living and social activities, and the lack of a longitudinal mental health history prior to 2013, serve to undermine the credibility of her allegations of a disabling medical or psychological condition. The objective record shows the claimant should be limited to the [RFC] as set forth in this Finding; however, greater limitations are not warranted.

(TR 25)(emphasis added).

In the RFC determination, the ALJ found that Plaintiff's mental impairments would restrict her ability to work in that she was "limited to simple work . . . involving routine and repetitive tasks with only occasional changes in the work setting, occasional interactions with the general public and occasional interactions with coworkers and supervisors." (TR 19-20). The ALJ provided specific reasons that are well supported by the record for finding that Dr. Morgan's assessment of Plaintiff's functional limitations was in some respects, but not entirely, consistent with the objective medical evidence in the record. The ALJ adopted Dr. Morgan's assessment that Plaintiff's mental impairments had resulted in moderate limitations in social functioning and moderate limitations in concentration, persistence and pace, and the ALJ included limitations in the RFC finding to accommodate these moderate functional limitations.

The ALJ found that Plaintiff's mental impairments had resulted in only mild limitations in her daily living activities, and the ALJ pointed to substantial evidence in the record to support this finding. In doing so, the ALJ rejected Dr. Morgan's assessment that

13

Plaintiff was moderately limited in her daily living activities as a result of her mental impairments.

The ALJ also rejected Dr. Morgan's remaining assessments of moderate functional limitations, and the ALJ provided reasons that are well supported by the evidence for this decision. Plaintiff specifically points to Dr. Morgan's statement that "[t]he likelihood is high of this claimant's emotional deterioration in a work like environment." (TR 412). The ALJ, however, reasoned in the decision that the medical evidence was not consistent with this assessment or with Plaintiff's assertion of disabling symptoms resulting from these impairments. The ALJ noted, and the record shows, the record did not document episodes of decompensation or acute exacerbations of psychiatric symptoms requiring inpatient care or hospitalization. The ALJ also noted, and the record shows, Plaintiff reported in April 2014 that she was not taking any psychotropic medications, there was "no evidence of ongoing mental health treatment for anxiety or depression," and she did not report anxiety or other problems with concentration and focus in February 2014. (TR 24). In sum, the ALJ did not err in evaluating Dr. Morgan's medical opinion, and the ALJ provided reasons for the weight given to Dr. Morgan's medical opinion and reasons, where necessary, for rejecting portions of that opinion.

## VII. Step Four and Alternative Step Five Decision

Plaintiff contends that there is not substantial evidence to support the ALJ's step four decision that Plaintiff is capable of performing her previous job as a janitor. Specifically, Plaintiff alleges that the record shows she did not perform this job at substantial gainful

14

activity levels because she only performed the job for two months and her income was only $743.60. Under the regulations, a claimant's previous employment may constitute past relevant work only if it is performed at substantial gainful levels, as determined by relevant guidelines set forth in the regulations. 20 C.F.R. § 404.1565(a), 416.965(a). The Commissioner has not responded to this particular argument and instead addresses only the alternative step five finding.

Because the ALJ went beyond the fourth step and determined that Plaintiff was alternatively not disabled at step five, any error in the step four decisionmaking is harmless. Plaintiff contends that the ALJ's alternative step five decision is also faulty.

During the hearing, the ALJ obtained the testimony of a VE concerning the availability of jobs in the economy for an individual with Plaintiff's vocational history and RFC for work. The VE testified that an individual with Plaintiff's vocational background and RFC for work could perform the jobs of sandwich maker, office helper, and inspector. (TR 71-72). The VE further testified that her testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT") and with her more than 35 years of experience in the labor market. (TR 73).

An ALJ is required by agency policy to inquire whether a VE's testimony is consistent with the DOT and to "elicit a reasonable explanation for" any apparent conflicts. See Poppa v. Astrue, 569 F.3d 1167, 1173-74 (10th Cir. 2009)(ALJ must inquire about and resolve any conflicts between the VE's testimony and DOT's job descriptions); Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999): Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704,

*2 (2000)(ALJ must elicit reasonable explanation for any conflict between DOT and VE's testimony before relying on VE's evidence to support disability determination).  Here, the ALJ asked the pertinent question, and the VE stated that her testimony was consistent with both the DOT and her professional experience.

Plaintiff argues that, nevertheless, the ALJ's RFC finding which limited Plaintiff to no more than occasional interaction with the public, co-workers, and supervisors conflicted with the description of the job of sandwich maker in the DOT because that description required the ability to frequently talk and hear.  The DOT describes the job of sandwich maker as one in which the worker "[p]repares sandwiches to individual order of customers" and "[r]eceives sandwich orders from customers."  The DOT states that the job of sandwich maker requires the ability to "frequently" talk and hear, or from 1/3 to 2/3 of the time, but the job is also described as not requiring "significant" speaking/signaling with people. DOT 317.664-010, 1991 WL 672749.

Plaintiff also contends that the VE's testimony conflicted with the DOT's description of the job of inspector because the job of inspector is performed in a "loud" environment, as described in DOT 559.687-074, and the ALJ precluded Plaintiff from working in environments with concentrated exposure to excessive noise due to her hearing impairment. Finally, Plaintiff contends that the VE's testimony conflicted with the DOT's description of the job of office helper because the DOT states it requires the ability to perform a "variety" of duties.

The Tenth Circuit Court of Appeals' decision in Haddock is informative.  In Haddock,

16

the court noted that "[w]e do not mean by our holding that the [DOT] 'trumps' a VE's testimony when there is a conflict about the nature of a job. We hold merely that the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." Haddock, 196 F.3d at 1091.

Under the agency's policy,

> [w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

SSR 00-4p, 2000 WL 1898704, * 2 (2000). The policy specifically states that "[a] VE . . . or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." Id. *3.

In questioning the VE during the hearing, the ALJ explicitly included all of the limitations included in the RFC finding, including the limitations that the hypothetical individual should avoid concentrated exposure to excessive noise and should perform only simple work involving routine and repetitive tasks with only occasional interactions with the general public, coworkers, and supervisors. After the VE responded during the hearing to

17

the jobs that the VE posited were available to such an individual, Plaintiff did not inquire about any conflicts between the VE's opinion and the DOT.  The VE then indicated that her testimony was both consistent with the DOT and with her own professional experience in the labor market. The ALJ thus had no apparent basis for inquiring about a specific conflict between the VE's testimony and the DOT. See Jack v. Colvin, 2016 WL 1089751, *13 (D.Colo. 2016)(unpublished op.)(citing Jasso v. Barnhart, 102 Fed. App'x 877, 878 (5th Cir. 2004)).

Under these circumstances, the ALJ reasonably relied on the VE's testimony that her testimony was consistent with both the DOT and her many years of experience in evaluating the labor market.  Therefore, there is substantial evidence in the record to support the Commissioner's step five determination, and the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____July 21st_____, 2016, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to

18

the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   1st   day of   July  , 2016.

*(signature)*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE